ELLIOT O. JACKSON
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131-3302
Telephone: (305) 357-2107
E-Mail: ejackson@hedinllp.com

ADRIAN GUCOVSCHI
**GUCOVSCHI LAW FIRM, PLLC**
140 BROADWAY, FL 46
NEW YORK, NY 10005
Telephone: (212) 884-4230
E-Mail: adrian@gr-firm.com

DAVID W. SCOFIELD – 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone: (801) 322-2002
E-Mail: dws@psplawyers.com

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| TANYA PRINCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>PLAY SPREE LTD.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED)<br><br>Case No. 2:25-cv-999<br>Honorable ____________________<br>United States District Judge |

Plaintiff Tanya Prince, individually and on behalf of all others similarly situated, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1. Defendant Play Spree Ltd. owns, operates, and receives significant revenue from its online "sweepstakes" casino available at www.spree.com, where it offers casino-style slots, table games, and digital scratch cards games to anyone willing to spend real money wagering on them (the "Spree Gambling Platform").

2. While Defendant advertises and promotes the Spree Gambling Platform to persons in Utah as a legitimate online business, giving it an aura of legitimacy and legality to Plaintiff and Class members, the Spree Gambling Platform is actually a dangerous and plainly unlawful gambling enterprise.

3. The scheme goes like this: Defendant sells digital "coins" to consumers on the Spree Gambling Platform – including consumers in Utah – and then immediately accepts those coins back (from the consumers who purchased them) as wagers on the outcomes of the various casino-style games of chance offered on the Spree Gambling Platform. Consumers who purchase and then wager "coins" on the Spree Gambling Platform do so in the hopes of winning more "coins," which can be used to place more wagers and, in some instances, are redeemable for cash. Plaintiff

and numerous other Utah residents have lost significant sums of their hard-earned money placing wagers on the Spree Gambling Platform, and Defendant has in turn reaped enormous profits from the losses these people have sustained.

4. Utah law clearly prohibits what Defendant has done. Utah's Gambling Act prohibits persons from operating or receiving revenue from "fringe gaming devices," "video gaming devices," or "gambling devices or records." Utah Code Ann. § 76-9-1412(1). The games offered on the Spree Gambling Platform constitute all three of these things, and Defendant has amassed significant revenue from Plaintiff and numerous others in Utah who have played them.

5. Accordingly, Plaintiff brings this Class Action Complaint, individually and on behalf of all others similarly situated, to redress Defendant's widespread violations of Utah's Gambling Act.

## PARTIES

6. Plaintiff Tanya Prince is a natural person and a citizen and resident of Dutch John, Utah.

7. Defendant Play Spree Ltd. is a private company organized and existing under the laws of Isle of Man, with a place of business in Isle of Man. Defendant Play Spree Ltd. has operated and continues to operate the Spree Gaming Platform at www.spree.com, and has received and continues to receive substantial revenue from the losses sustained by players who have purchased and wagered with digital "coins"

on the Spree Gaming Platform, including Utah residents.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

9. The Court has personal jurisdiction over Defendant and venue is proper in this judicial District because Defendant purposefully directed the Spree Gambling Platform to residents of Utah (including by advertising and running promotional materials directed to persons in Utah), knowingly accepted registrations, purchases of "coins," and wagers placed with purchased "coins" on the Spree Gambling Platform from Plaintiff and numerous other persons in Utah, and collected enormous revenues from the losses suffered by Plaintiff and numerous other persons in Utah who placed wagers with such "coins" on the Spree Gambling Platform, such that a substantial portion of the events that gave rise to Plaintiff's claims occurred in Utah and within this judicial District.

## FACTUAL ALLEGATIONS

### I. Utah's Gambling Act

10. Utah's Gambling Act entitles "[a]n individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record" to "bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

11. As defined in Utah's Gambling Act, a "fringe gaming device" is "a mechanically, electrically, or electronically operated machine or device" that:

> (i) is not an amusement device[1] or a vending machine[2];
>
> (ii) is capable of displaying or otherwise presenting information on a screen or through any other mechanism; and
>
> (iii) provides the user with a card, token, credit, gift certificate, product, or opportunity to participate in a contest, game, gaming scheme, or sweepstakes with a potential return of money or other prize.

---

[1] An "amusement device" is "a game that . . . is activated by a coin, token, or other object of consideration or value" and "does not provide the opportunity to," *inter alia*, "enter into a . . . gambling event[.]" *Id.* § 76-9-1401(1)(a)(i)-(ii).

[2] A "vending machine" is "a device . . . that dispenses merchandise in exchange for money or any other item of value[,] provides full and adequate return of the value deposited," and, *inter alia*, "through which the return of value is not conditioned on an element of chance or skill[.]" *Id.* § 76-9-1401(19)(a)-(c).

*Id.* § 76-9-1401(7)(a).

12. A "video gaming device" is defined as "a device that includes all of the following":

> (a) a video display and computer mechanism for playing a game;
>
> (b) the length of play of any single game is not substantially affected by the skill, knowledge, or dexterity of the player;
>
> (c) a meter, tracking, or recording mechanism that records or tracks any money, tokens, games, or credits accumulated or remaining;
>
> (d) a play option that permits a player to spend or risk varying amounts of money, tokens, or credits during a single game, in which the spending or risking of a greater amount of money, tokens, or credits;
>
> > (i) does not significantly extend the length of play time of any single game; and
> >
> > (ii) provides for a chance of greater return of credits, games, or money; and
>
> (e) an operating mechanism that, in order to function, requires inserting money, tokens, or other valuable consideration other than entering the user's name, birthdate, or contact information.

*Id.* § 76-9-1401(20).

13. Finally, a "gambling device or record" is "anything specifically

designed for use in gambling[3] or fringe gambling[4] or used primarily for gambling or fringe gambling." *Id.* § 76-9-1401(10).

14. Utah's Gambling Act provides that an individual who suffers an economic loss as a result of any of the above-defined devices may recover "twice the amount of the economic loss" they suffered. *Id.* § 76-9-1412(1)-(2).

15. As alleged below, during the relevant statutory period, Defendant violated Utah's Gambling Act by operating and amassing enormous revenue from the losses sustained by Utah residents on the illicit "fringe gambling devices," "video gaming devices," and "gambling devices or records" offered on its Spree Gambling Platform.

## II. The Evils of Online Gambling

16. Gambling is one of the oldest and heavily regulated human behaviors. Even before the advent of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through

---

[3] "Gambling" is defined as "risking anything of value for a return or risking anything of value upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that someone will receive anything of value in the event of a certain outcome." *Id.* § 76-9-1401(8)(a).

[4] "Fringe gambling" is defined as "any de facto form of gambling, lottery, fringe gaming device, or video gaming device that is given, conducted, or offered for use or sale by a business in exchange for anything of value or incident to the purchase of another good or service." *Id.* 76-9-1401(6)(a).

biblical injunctions. As religious authority gave way to democratic governments, the vast majority of states in the country enacted legislation prohibiting or strictly regulating gambling activities. Unlike historical relics, these states have recognized that gambling poses a public health risk. Scientific research has confirmed and shed further light on the perils of gambling—ranging from mental health issues to physical, financial, and interpersonal problems.[5]

17. Against this backdrop, many states, including Utah, have been steadfast in maintaining and enforcing their gambling laws, even in the event federal law takes a more permissive approach. As stated by Utah's legislature in enacting the Gambling Act:

> If federal law authorizes online gambling in the states of the United States and provides that individual states may opt out of online gambling, this state shall opt out of online gambling in the manner provided by federal law and within the time frame provided by that law.

Utah Code Ann. § 76-9-1402(4)

18. With technological advances, however, many casinos and other gambling operators proliferated into people's pockets through online websites and apps, including the Spree Gambling Platform. These online gambling platforms have been particularly challenging to regulate because many states' anti-gambling

---

[5] Harvard Magazine, *Governing Games of Chance* (Feb. 14, 2025), https://www.harvardmagazine.com/2025/03/harvard-research-gambling-public-health-crisis.

statutes were originally enacted to prohibit in-person gambling activities.

19. Worse still, because these online gambling platforms operate outside of the confines of gambling laws, they knowingly rig the odds against users to further exploit them. For example, while slot machines in a physical casino are required to randomize their results, online gambling platforms tailor "wins" and "losses" to manipulate consumer engagement through powerful algorithms. As the CEO of a popular online gambling platform explained:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[6]

20. Defendant has employed similar tactics to maximize the profits it reaps through the Spree Gambling Platform.

## III. The Spree Gambling Platform

21. Defendant owns and operates the Spree Gambling Platform, which is available at www.spree.com. The Spree Gambling Platform allows consumers,

---

[6] Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now, VENTUREBEAT* (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-mattersnow/.

including those in Utah, to spend real money to gamble on a wide variety of chance-based games, including slots, table games, and digital scratch cards.

22. The process of getting set up with an account to play the gambling games offered on the Spree Gambling Platform simply requires a consumer to input basic personal information, including, *inter alia*, his or her e-mail address and state of residence.

23. After creating an account, the consumer can begin placing wagers on the gambling games offered on the Spree Gambling Platform with a small, one-time allotment of free "gold coins" and "spree coins" (referred to collectively at times herein as "coins") provided upon enrollment.

24. Defendant's "gold coins" can only be used to place wagers on the Spree Gambling Platform, whereas its "spree coins" can be used to place wagers on the Spree Gambling Platform **and are redeemable for cash**.

25. After invariably losing the initial allotment of free "gold coins" and "spree coins," the consumer must purchase more "gold coins" or "spree coins" if he or she wishes to continue wagering with them on the Spree Gambling Platform.

26. Thus, after the consumer loses the free initial allotments of "gold coins" and/or "spree coins", Defendant will aggressively attempt, through persistent pop-up screens and pages, to sell the consumer additional "coins" – at varying prices depending on the amount of "coins" the consumer wishes to purchase.

27. Purchases of additional “coins” on the Spree Gambling Platform can be made using a wide variety of payment methods, including credit and debit card. Regardless of the payment method, the purchased “coins” are instantly available for gambling on the Spree Gambling Platform.

28. The “gold coins” and “spree coins” won by consumers playing Defendant's games of chance are identical to the “gold coins” and “spree coins” that Defendant sells.

29. Freshly topped off with an additional allotment of purchased “coins,” the consumer will wager those coins in the hopes of winning more “gold coins” and “spree coins” that he or she would otherwise have had to purchase.

30. Notably, the outcome of every wager placed on each of the games offered on the Spree Gambling Platform is based on an element of chance.

31. Defendant maintains win and loss records and account balances for each person who creates an account, purchases “coins,” and uses those “coins” to place wagers on the Spree Gambling Platform. Indeed, once Defendant’s algorithms determine the outcome of a wager and Defendant displays the outcome, Defendant adjusts the balance of “coins” in the person’s account. Defendant keeps detailed records of each wager and its outcome for every player of every game offered on the Spree Gambling Platform.

32. Using the information provided by users at the time they register for

accounts and make purchase of "coins," as well as by analyzing users' IP addresses, Defendant has intimate knowledge of, and maintains records reflecting, the geographic locations (including city and state for U.S.-based players) from which each of its users enrolled in, made purchase of "coins," and lost "coins" wagering on the Spree Gambling Platform.

33. Thus, at the time Plaintiff and the other members of the Class enrolled in, purchased "coins" on, and lost "coins" placing wagers on the Spree Gambling Platform, Defendant had actual knowledge that these persons were located in Utah based on the information they had provided while registering for accounts and making purchases and the IP addresses associated with the devices from which they accessed the Spree Gambling Platform. Defendant nonetheless happily pocketed the losses they sustained using purchased coins to place wagers on the Spree Gambling Platform.

34. During the three-year period preceding the filing of this action, Defendant has received significant revenue from Utah residents through its operation of "fringe gambling devices," "video gaming devices," and "gambling devices or records" on the illicit Spree Gambling Platform – in direct violation of Utah's Gambling Act.

## IV. Plaintiff Tanya Prince's Experience

35. Plaintiff Tanya Prince created an account on the Spree Gambling Platform and, after losing her initial allotment of free "coins" by placing wagers on the Spree Gambling Platform, she purchased additional "coins" from Defendant.

36. Thereafter, Plaintiff continued to play the gambling games offered on the Spree Gambling Platform by placing wagers with the "gold coins" and "spree coins" she had purchased for the chance to win additional such "coins," including "spree coins" that are redeemable for cash.

37. During the three-year period preceding the filing of this action, Plaintiff wagered and lost a significant sum of money, in the form of the "coins" she had purchased from Defendant, playing the gambling games offered on the Spree Gambling Platform.

38. At all times relevant hereto, Plaintiff resided in, was a citizen of, and was physically present in Utah.

## CLASS ACTION ALLEGATIONS

39. Plaintiff seeks to represent a class defined as all residents of Utah who purchased and lost "coins" wagered on Defendant's Spree Gambling Platform at any time during the three-year period preceding the filing of this action (continuing through the date of any order granting class certification).

40. Members of the Class are so numerous that their individual joinder herein is impracticable. The members of the Class number in at least the tens of

thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined in discovery. The Class may be notified of the pendency of this action at the addresses found in Defendant's records.

41. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether the games offered on the Spree Gambling Platform are "fringe gaming devices"; (b) whether the games offered on the Spree Gambling Platform are "video gaming devices"; (c) whether the games offered on the Spree Gambling Platform are "gambling devices or records"; (d) whether Defendant "operates or receives revenue from" the games offered on the Spree Gambling Platform; (e) whether Defendant's acts of selling "coins" to consumers, accepting "coins" as wagers from consumers, and receiving revenue from persons in Utah as a result of the games offered on the Spree Gambling Platform violated Utah's Gambling Act; and (f) the amount of monetary relief the Class is entitled to recover from Defendant.

42. The claim of the named Plaintiff is typical of the claims of the members of the Class in that the named Plaintiff and all Class members suffered monetary loss as a result of the games offered on Defendant's Spree Gambling Platform.

43. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she

has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

44. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

## CLAIM FOR RELIEF

**Violation of Utah's Gambling Act, Utah Code Ann.§ 76-9-1401, *et seq.***
**(By Plaintiff, Individually and on Behalf of the Class, Against Defendant)**

45. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the members of

the Class against Defendant.

47. Utah's Gambling Act provides that "an individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record may bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

48. During the time period applicable to this action, and while residing in Utah, Plaintiff purchased "coins" with real money from Defendant and used those coins to place wagers on the games offered on the Spree Gambling Platform, which resulted in Plaintiff suffering "economic loss."

49. Likewise, during the time period applicable to this action, and while residing in Utah, at least tens of thousands of other persons (members of the proposed Class) purchased "coins" with real money from Defendant and used those coins to place wagers on the games offered on the Spree Gambling Platform, which resulted in each of these persons suffering "economic loss."

50. The "coins" that Plaintiff and members of the Class purchased from Defendant, and that Defendant accepted from Plaintiff and Class members as wagers on the outcomes of the games offered on the Spree Gambling Platform, were each a "[]thing of value" within the meaning of section 76-9-1401(8)(a) of the UGA.

51. Likewise, the "coins" that Plaintiff and members of the Class purchased from Defendant, and that Defendant accepted from Plaintiff and Class members as wagers on the outcomes of the games offered on the Spree Gambling Platform, were each a "representation of value" and thus constituted "gambling bets" within the meaning of section 76-9-1401(9) of the UGA.

52. All of the games offered on the Spree Gambling Platform and played by Plaintiff and members of the Class required Plaintiff and Class members to "risk[] [a] []thing of value for a return or . . . upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that [they] will receive [a] []thing of value in the event of a certain outcome." *Id.* § 76-9-1401(8)(a). Accordingly, by accepting the "coins" purchased by Plaintiff and Class members as wagers on the outcomes of games offered on the Spree Gambling Platform, Defendant engaged in "gambling" as defined in the Act.

53. All of the games offered on the Spree Gambling Platform provided Plaintiff and Class members the "opportunity to . . . enter into a gambling event," and therefore were not "amusement devices" within the meaning of the Act. *Id.* § 76-9-1401(1)(a)(i)-(ii).

54. All of the games that Plaintiff and Class members lost "coins" playing on the Spree Gambling Platform were "conditioned on an element of chance or

skill," and therefore were not "vending machines" within the meaning of the Act. *Id.* § 76-9-1401(19)(a)-(c).

55. All of the games offered on the Spree Gambling Platform and played by Plaintiff and members of the Class were "capable of displaying or otherwise presenting information on a screen or through any other mechanism," and "provide[d] [Plaintiff and Class members] with a . . . token, credit, . . . or opportunity to participate in a contest, game, [or] gaming scheme . . . with a potential return of money or other prize." *Id.* § 76-9-1401(7)(a). Accordingly, all of the games that Plaintiff and Class members lost "coins" playing on the Spree Gambling Platform constituted "fringe gaming devices" as defined under the Act. *Id.* § 76-9-1401(7)(a).

56. All of the games offered on the Spree Gambling Platform and played by Plaintiff and members of the Class included "a video display and computer mechanism for playing a game," "a meter, tracking, or recording mechanism that records or tracks any money, tokens, games, or credits accumulated or remaining," "a play option that permits a player to spend or risk varying amounts of money, tokens, or credits during a single game, in which the spending or risking of a greater amount of money, tokens, or credits . . . does not significantly extend the length of play time of any single game[] and . . . provides for a chance of greater return of credits, games, or money," and "an operating mechanism that, in order to function, requires inserting money, tokens, or other valuable consideration other than entering

the user's name, birthdate, or contact information." *Id.* § 76-9-1401(20)(a), (c)-(e). Moreover, "the length of play of any single game [offered on the Spree Gambling Platform and played by Plaintiff and members of the Class] [wa]s not substantially affected by the skill, knowledge, or dexterity of the player[.]" *Id.* 76-9-1401(20)(b). Accordingly, all of the games that Plaintiff and Class members lost "coins" playing on the Spree Gambling Platform constituted "video gaming devices" as defined under the Act. *Id.* § 76-9-1401(20).

57. Moreover, because each of the games offered on the Spree Gambling Platform was a "fringe gaming device" and/or "video gaming device" that was "conducted[] or offered for use or sale by [Defendant] in exchange for [some]thing of value," i.e., purchased "coins," Defendant's acceptance of "coins" purchased by Plaintiff and Class members as wagers on the games offered on the Spree Gambling Platform constituted "fringe gambling" within the meaning of the Act. *Id.* § 76-9-1401(6)(a).

58. All of the games offered on the Spree Gambling Platform and played by Plaintiff and members of the Class were "specifically designed for use in gambling or fringe gambling or used primarily for gambling or fringe gambling." *Id.* § 76-9-1401(10). Accordingly, all of the games that Plaintiff and Class members lost "coins" playing on the Spree Gambling Platform constituted "gambling devices or records" as defined under the Act. *Id.* § 76-9-1401(10).

59. Thus, during the applicable three-year period preceding the filing of this action, all of the games that Defendant "operate[d]" on the Spree Gambling Platform constituted "fringe gaming device[s], video gaming device[s], [and] gambling device[s]", and Defendant "receive[d]" substantial "revenue" from the "coins" purchased, wagered, and lost by Plaintiff and members of the Class on the outcomes of those games. *Id.* § 76-9-1412(1).

60. By operating and receiving revenue from Utah residents as a result of the fringe gaming devices, video gaming devices, and gambling devices or records Defendant offered on the Spree Gambling Platform, Defendant directly violated Utah's Gambling Act and is liable for damages to Plaintiff and the Class members, in the amount of twice the aggregate sum of the "economic loss[es]" suffered by Plaintiff and Class members on the Spree Gambling Platform. *See id.* § 76-9-1412(1)-(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendant's conduct as described herein violated Utah's Gambling Act, § 76-9-1401, *et seq.*;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For an award to Plaintiff and each Class member of twice the amount of economic losses suffered by Plaintiff Class members on the Spree Gambling Platform, as provided by Utah's Gambling Act, Utah Code Ann. § 76-9-1412(1)-(2);

E. For prejudgment interest on all amounts awarded; and

F. For an order awarding reasonable attorneys' fees and costs to counsel for Plaintiff and the Class pursuant to Rule 23 and Utah Code Ann. § 76-9-1412(1).

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 2, 2025

Respectfully submitted,

**PETERS | SCOFIELD**
*A Professional Corporation*

/s/ David W. Scofield
DAVID W. SCOFIELD

-and-

**HEDIN LLP**
ELLIOT O. JACKSON *

**GUCOVSCHI LAW FIRM, PLLC**
ADRIAN GUCOVSCHI*

* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and Putative Class*